Clifford Dale HAVENS, Appellant (Plaintiff Below),

v.

Donald B. RITCHEY, D.P.M. and Harry Eakin, as Commissioner of Insurance for the State of Indiana, Appellees (Defendants Below).

No. 49S04-9112-CV-985.

Supreme Court of Indiana.

Dec. 12, 1991.

Michael S. Miller, Mendelson, Kennedy, Miller, Muller & Hall, Indianapolis, for appellant.

Frederick Wm. LaCava and Robert G. Zeigler, LaCava, Zeigler & Carter, Indianapolis, for appellees.

SHEPARD, Chief Justice.

In a medical malpractice action for failure to diagnose, should we recognize the doctrine of continuing wrong as a way to decide statute of limitation questions? We conclude that the idea of continuing wrong may have utility in some situations, but does not operate in this case to make the claim timely.

Plaintiff-appellant Clifford Havens first sought treatment for pain in his right foot from defendant-appellee Dr. Ritchey in July 1984. Ritchey performed surgery on the foot in November 1984, but did not diagnose or treat the dislocation of one of Havens' toes. Havens made several trips to Dr. Ritchey's office over the next few months, continually complaining about pain in the ball of his right foot. Havens' last visit to Ritchey was on July 3, 1985. Ritchey suggested additional surgery; Havens, however, wanted to wait until the fall. Havens was supposed to return to the doctor's office in three months, but he did not do so despite two reminders sent by Ritchey's office.

On October 31, 1985, Havens visited Dr. Atz, who diagnosed Havens' problem as a second metatarsophalengeal dislocation. He performed surgery to correct this problem on November 20, 1985. Havens filed his proposed medical malpractice complaint against Ritchey with the Indiana Department of Insurance on October 14, 1987. Dr. Ritchey asked the Marion Superior Court for a preliminary determination of law and fact, seeking summary judgment in his favor on the basis that Havens had filed his complaint outside of the two-year statutory time period for filing a medical malpractice suit. The trial court granted Dr. Ritchey's motion.

The Court of Appeals reversed, holding a genuine issue of material fact existed regarding when the statute of limitation began to run. *Havens v. Ritchey* (1991), Ind. App., 566 N.E.2d 1109. We grant Ritchey's petition to transfer and vacate the opinion of the Court of Appeals.

The Indiana General Assembly has enacted a statute of limitation for medical malpractice actions which varies from the standard statute of limitation applicable generally to tort suits. The medical malpractice statute can be contrasted with other statutes of limitation, including the standard statute of limitation for tort actions. Indiana Code § 34–1–2–2(1) (West 1983) provides that an action for injuries to person or character shall be commenced within two years after the cause of action has *accrued*. The legislature left it for the courts to determine when the cause accrues.[1] *Barnes v. A.H. Robins Co., Inc.* (1985), Ind., 476 N.E.2d 84.

The legislature did not confer such an assignment on the courts in medical malpractice actions. The statute of limitation for actions brought under the Medical Malpractice Act is found in Ind.Code § 16–9.5–3–1 (West Supp.1991). This section provides in part: "No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or that should have been rendered unless filed within two (2) years from *the date of the alleged act, omission, or neglect....*" Ind.Code § 16–9.5–3–1 (emphasis added). This statute of limitation has repeatedly been described as an "occurrence" statute. *See, e.g., Cacdac v. Hiland* (1990), Ind., 561 N.E.2d 758; *Yarnell v. Hurley* (1991), Ind. App., 572 N.E.2d 1312; *Walters v. Rinker* (1988), Ind.App., 520 N.E.2d 468; *Frady v. Hedgcock* (1986), Ind.App., 497 N.E.2d 620. Because the statute is an occurrence statute, it begins to run on the date of the alleged malpractice. *Cacdac*, 561 N.E.2d 758.

It is abundantly clear that the legislature intended the statute to begin running upon the act, omission, or neglect of which the plaintiff complains. This conclusion is reached by observing the language of the statute of limitation provision, the general purposes of statutes of limitation, and the statute's specific purpose in the Medical Malpractice Act.

The general purpose of a statute of limitation is to encourage the prompt presentation of claims. *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404, 404 N.E.2d 585, 604.

> Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.

*Rohrabaugh v. Wagoner* (1980), 274 Ind. 661, 663–64, 413 N.E.2d 891, 893.

This Court has accepted the legislature's decision that these reasons are even stronger in the medical malpractice context. The Medical Malpractice Act was enacted as a legislative response to the reduction of health care services available to the public. *Id.* This health care reduction was the result of health care providers making the decision to stop providing their services. *Id.* It was the legislative perception that health care providers were making these decisions because of increased malpractice claims and the difficulty in obtaining malpractice insurance. *Id.; Johnson,* 404 N.E.2d 585. One of the methods the legislature used to remedy this problem involved limiting patient remedies against

---

**1.** The general rule is that a cause of action accrues when the resultant damage of a negligent act is ascertainable or could be ascertained by due diligence. *Barnes,* 476 N.E.2d 84. When an injury to a plaintiff was caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance, a discovery rule is applied, and the statute of limitation begins to run "from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another." *Id.* at 87–88.

health care providers, in part by restricting the time in which a plaintiff has to bring suit. The legislature required medical malpractice plaintiffs to bring their cause of action within two years of the time the act, omission, or neglect *occurred,* not within two years of the time the plaintiff discovered or should have discovered the alleged malpractice.

Indiana courts have previously acknowledged the inherent harshness of the occurrence rule on certain plaintiffs, but have found the rule to be reasonable in light of other policies intended to be furthered by the rule. *See Rohrabaugh,* 274 Ind. 661, 413 N.E.2d 891; *Jones v. Cloyd* (1989), Ind.App., 534 N.E.2d 257.

It is thus beyond dispute that Havens' medical malpractice action had to be brought within two years of the date of the alleged act, omission, or neglect. To determine if his claim was timely, we must determine when the events about which he complains took place.

■ We first note the standard of review in summary judgment cases. When reviewing the propriety of the trial court's entry of summary judgment, we apply the same standard as does the trial court. We view the pleadings, depositions, answers to interrogatories and affidavits in the light most favorable to the non-moving party. *Ayres v. Indian Heights Volunteer Fire Department, Inc.* (1986), Ind., 493 N.E.2d 1229. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Havens' complaint against Dr. Ritchey alleges that Ritchey failed to diagnose Havens' dislocated bone and failed to adequately treat the dislocated bone. Havens argues because he was under the continued care and treatment of Ritchey until the time he consulted Dr. Atz, the statute did not begin to run until he obtained the second opinion. In other words, he contends Dr. Ritchey's failure to diagnose and treat his dislocated toe was a continuing wrong

that did not cease until Havens sought a second opinion from Dr. Atz.

■ Havens asks us to adopt a rule used by the Court of Appeals in examining questions like the one before us. "When an entire course of conduct combines to produce an injury, the conduct may constitute a continuing wrong so as to delay the running of the statute of limitations." *Frady,* 497 N.E.2d at 622. This idea is borrowed from an earlier declaration by this Court that "the statute of limitations will not begin to run until there is a cessation of the overt acts constituting the wrong." *Montgomery v. Crum* (1928), 199 Ind. 660, 679, 161 N.E. 251, 259 (tort action to recover damages for the abduction of a child). As applied to medical malpractice actions, the Court of Appeals has said this means that the statutory period begins to run at the end of the continuing wrongful act. *Frady,* 497 N.E.2d 620. The doctrine of continuing wrong is not an equitable doctrine; it is simply a legal concept used to define when an act, omission or neglect took place.[2]

■ Havens last visited Ritchey on July 3, 1985. There is nothing in the record to demonstrate that Ritchey would have had any occasion to diagnose Havens' problem after this date. A physician cannot be under a continuing duty to review all files daily to ensure that he did not misdiagnose a condition of a patient he may not have seen for months or even years. This duty would be completely overwhelming to health care providers, and cut against the purposes of the Medical Malpractice Act. We hold that when the sole claim of medical malpractice is a failure to diagnose, the omission cannot as a matter of law extend beyond the time the physician last rendered a diagnosis.

■ There is no indication that Ritchey performed any act which continued past the last date Havens visited Ritchey's office that is alleged to have caused Havens' damage. As a matter of law, the latest date upon which Havens' claim began to run was July 3, 1985, the last date Havens visited Dr. Ritchey's office to give Ritchey

2. Another concept sometimes deployed to avoid the running of the statute of limitation in medical malpractice actions is that of fraudulent concealment. *Guy v. Schuldt* (1956), 236 Ind. 101, 107, 138 N.E.2d 891, 894 ("Before the doc- trine of estoppel may be used to bar the defendant's use of the statute of limitations, the fraud must be of such character as to prevent inquiry, or to elude investigation, or to mislead the party who claims the cause of action").

an opportunity to diagnose his condition properly. Havens did not file his proposed complaint until October 14, 1987, several months after the two-year statute of limitation had run. The trial court properly granted summary judgment in favor of Dr. Ritchey.

We affirm the judgment of the trial court.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.