Jane DOE, Appellant–Plaintiff,

v.

UNITED METHODIST CHURCH[1] United Methodist South Indiana Conference, Inc., and United Methodist Church South Indiana Annual Conference, Appellees–Defendants.

No. 49A02–9512–CV–748.

Court of Appeals of Indiana.

Dec. 13, 1996.

---

1. Due to the sensitive nature of the case, we have, on our own motion, not disclosed the identities of the parties involved. *See A.M. v. Roman Catholic Church*, 669 N.E.2d 1034, (Ind.Ct.App. 1996).

Stan B. Hirsch, Haymaker, Hirsch & Fink, Indianapolis, Jack G. Fynes, David J. Coyle, Shumaker, Loop & Kendrick, Toledo, OH, for Appellant–Plaintiff.

David M. Mattingly, Laura B. Daghe, Ice Miller Donadio & Ryan, Indianapolis, Sharon L. Groeger, Karl L. Mulvaney, Bingham Summers Welsh & Spilman, Indianapolis, for Appellees–Defendants.

## OPINION

ROBERTSON, Judge.

Jane Doe was born to a large family in 1968, the ninth of ten children. A high achiever, Doe was elected president of her class all four years of high school and ultimately graduated as valedictorian with a perfect 4.0 grade-point average. Doe played on her high school basketball team. There, she became acquainted with her coach, Defendant R.G.V., who was a United Methodist minister [Minister]. Doe also associated with Minister in conjunction with the youth fellowship program he sponsored at his church.

Minister was a married man approximately twice Doe's age. Minister began counseling Doe for her depression and abused this relationship to manipulate Doe into having a sexual relationship with him. Minister represented that having sexual intercourse with him would be therapeutic, and assured Doe that it was an appropriate part of the counseling process. The sexual relationship began in 1984 when Doe was sixteen (16) years-old and continued until December 23, 1988, when Doe was twenty (20) years-old. Minister convinced Doe that they had a "love" relationship. Through domination and manipulation, Minister enlisted Doe's cooperation in keeping the sexual relationship secret.

Doe was aware that Minister was married and that her sexual relationship with him was prohibited by church teaching. Doe was also aware that her parents and others would not approve and would have believed that Minister was harming her. Doe knew that her father would "have seen it as [Minister] using me and abusing me." Doe kept the sexual relationship secret because she understood that Minister might lose his job or even be arrested if found out. While attending college, Doe would skip classes and tests to be with Minister, despite the adverse effect upon her grades. Even after the sexual relationship ended, Minister continued to exert domination and control over Doe by expressing his love and affection for her.

Doe continued to suffer from depression and sought professional help in September of 1988. During the next few years, she re-

ceived counseling and medical attention from several different health care professionals. These professionals were unanimous in their opinion that Doe's relationship with Minister was destructive, and all adamantly encouraged her to end it. However, Doe continued to defend Minister and her "love" relationship with him and could not be persuaded to understand or accept that the relationship was harmful to her. Doe eventually became suicidal and was hospitalized on four occasions. She received electroconvulsive therapies.

On May 23, 1991, Doe's therapists held an intervention-type family meeting which was attended by Doe's mother, father, and all nine of her siblings. At this meeting, Doe was required to disclose that she had been having a sexual relationship with Minister to her family. Neither of Doe's parents, nor any other family member for that matter, had any previous knowledge of the sexual relationship. Doe's family reacted with outrage (as Doe had expected).

On February 1, 1993, approximately twenty (20) months later, Doe filed the instant lawsuit. In her complaint, she alleged that Minister had committed approximately 60 acts of sexual battery and rape against her. Doe's complaint also named as defendants, the particular United Methodist Church which had employed Minister when the sexual abuse had begun, the United Methodist South Indiana Conference, Inc., and the United Methodist Church South Indiana Annual Conference [Church Defendants]. Doe alleged that the Church Defendants were vicariously liable for Minister's torts and were also liable for the negligent retention, training, and supervision of Minister. Minister had earlier relinquished his ordination and left church employment after having been disciplined for unrelated sexual misconduct.

The Church Defendants moved for, and were granted, summary judgment based upon the two-year statute of limitations applicable to personal injury claims. This appeal ensued. Both the particular United Methodist church as well as the United Methodist South Indiana Conference, Inc./United Methodist South Indiana Annual Conference have submitted appellee briefs.

Additional facts are supplied as necessary.

## DECISION

■ As stated in *A.M. v. Roman Catholic Church,* 669 N.E.2d 1034, (Ind.Ct.App.1996):

Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, this court must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred.

Statutes of limitation are favored because they afford security against stale claims and promote the peace and welfare of society. They are enacted upon the presumption that one having a well-founded claim will not delay in enforcing it. The defense of a statute of limitation is peculiarly suitable as a basis for summary judgment.

*Id.* at 1037 (Citations omitted). The general statute of limitations for personal injuries, Ind.Code 34–1–2–2(1), provides that lawsuits must be brought within two years after the cause of action has accrued. Claims for injuries suffered during childhood must be brought within two years after reaching the age of eighteen. I.C. 34–1–2–5; *A.M.,* 669 N.E.2d at 1037–38. When the application of the statute of limitations rests upon questions of fact, it is generally an issue for the jury to determine. *Fager v. Hundt,* 610 N.E.2d 246, 253 n. 5 (Ind.1993). However, where the undisputed facts show that the complaint was filed after the running of the applicable statute of limitations, the court shall enter judgment for the defendant. *See INB National Bank v. Moran Electric Service, Inc.,* 608 N.E.2d 702, 709 (Ind.Ct.App. 1993), *trans. denied.*

## I.

### Discovery Rule

Under Indiana's discovery rule, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *Wehling v. Citizens National Bank,* 586 N.E.2d 840, 843 (Ind.1992). The determination of when a cause of action accrues is a question for the court. *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 564 (Ind.1992); *Barnes v. A.H. Robins Co., Inc.,* 476 N.E.2d 84, 85 (1985). For a cause of action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable but only that some ascertainable damage has occurred. *See Monsanto Co. v. Miller,* 455 N.E.2d 392, 394 (Ind.Ct.App.1983) (This case predates the adoption of the discovery rule in *Wehling,* 586 N.E.2d 840). In *Fager,* 610 N.E.2d 246 (Ind.1993), our supreme court specifically rejected an application of the discovery rule based upon the subjective perspective of the injured person based on the injured person's actual knowledge. *Id.* at 250–51. Moreover, the *Fager* court distinguished repressed memory cases from those, similar to the one at bar, "[w]here a plaintiff is aware of childhood sexual abuse but unaware of the full extent of the resulting psychological or physical ramifications ..." *Id.* at 249 n. 1. The *Fager* court noted that, in many jurisdictions, the statute of limitations would operate to preclude such an action under an application of the discovery rule. *Id.* (Citations omitted).

Doe recognizes that Indiana's discovery rule is objective but nevertheless asserts that she filed her lawsuit in a timely manner. Doe relies on the case of *Riley v. Presnell,* 409 Mass. 239, 565 N.E.2d 780 (1991) for the proposition that:

> The reasonable person who serves as the standard in this evaluation, however, is not a detached, outside observer assessing the situation without being affected by it. Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint....

we look at 'a reasonable person *in the position of the plaintiff.*' If such an initially reasonable person would, by reason of the experience forming the basis for the plaintiff's complaint, have his or her judgment altered in some way, such altered judgment then becomes the standard. The cause of action will not accrue until such an individual would have discovered the damage. In other words, if the defendant's conduct would, in an ordinary reasonable person, cause an injury which by its very nature prevents the discovery of its cause, the action cannot be said to have accrued. Accrual of the cause of action occurs when the ordinary reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience.

565 N.E.2d at 785–86 (Citations omitted; emphasis original). In *Riley,* although the plaintiff-patient had not alleged repressed memory, the court held that a genuine issue of material fact existed as to when the patient knew or should have known that he had suffered psychological damage as the result of his psychiatrist's sexual misconduct perpetrated under the guise of therapy. *Id.*

Doe argues that Minister exercised such domination and control over her that she did not discover that his actions were wrong and were harmful to her before the May 23, 1991, family meeting where her therapists and family finally prevailed upon her to recognize that Minister's conduct had been abusive and that there was a causal nexus between the abuse and her depression and related injuries. Doe argues that she did not discover, nor could she reasonably have discovered, her cause of action until that time and thus, that her lawsuit, initiated less than two years later, was filed in a timely manner. In opposition to summary judgment, Doe presented the carefully drafted affidavits of three of her therapists which support this theory.

Our research has led us to the conclusion that the authority cited by Doe for the objective "reasonable person in the position of plaintiff" standard for the discovery of a cause of action belongs to a very slim minority. *See generally* Donaldson, Russell G., *Running of Limitations Against Action for*

*Civil Damages For Sexual Abuse of Child,* 9 A.L.R.5th 321. Where the plaintiff understands the significance of the events and their moral character, a reasonable person would have known that she had been the victim of abuse and that her injuries had been caused by the abuse. *K.B. v. Evangelical Lutheran Church,* 538 N.W.2d 152, 157–58 (Minn.Ct.App.1995). The *K.B.* court noted that the plaintiff's expert incorporated a subjective 'victim's' standard which was inconsistent with the objective 'reasonable person' standard, and held:

> It is not possible that a reasonable person in her situation would discuss past instances of sexual abuse during a treatment session for severe psychological problems without understanding at some level that the past incidents had some connection to her current situation.

*Id.*; *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans,* 665 So.2d 1307, 1311 (La.Ct.App.1995) (Where plaintiff had not blocked out all memory of the sexually abusive relationship, his assertion that he did not arrive at an understanding of the injurious nature of the relationship until he sought therapy was not reasonable where he had been notified some years earlier that another victim had filed suit against the priest and that a criminal investigation had been conducted), *writ denied; Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis.2d 302, 533 N.W.2d 780, 785–86 (1995) (The discovery rule will not save an action where the plaintiff had been aware of the tortfeasor and the alleged tortious acts but had claimed to have been unable to connect her knowledge of the acts with her emotional harm until some years later), *reconsideration denied, cert. denied,* — U.S. —, 116 S.Ct. 920, 133 L.Ed.2d 849; *Flanagan v. Grant,* 897 F.Supp. 637, 643 (D.Mass.1995) (Plaintiff's cause of action was time barred where she had intellectually understood the relationship between her feelings and the sexual abuse even though she was unable to appreciate the full effect or extent of the emotional damage); *Roe v. Archdiocese of St. Paul & Minneapolis,* 518 N.W.2d 629, 632 (Minn.Ct.App. 1994) (Victim should have known she was abused where she was between 18 and 20 years old at the time of the abuse), *review denied; ABC v. Archdiocese of St. Paul & Minneapolis,* 513 N.W.2d 482, 486 (Minn.Ct. App.1994) (Victim should have known she had been abused where she was between 15 and 26 years old at the time of the abuse); *Ernstes v. Warner,* 860 F.Supp. 1338, 1341 (S.D.Ind.1994) (Cause of action for sexual abuse inflicted by plaintiff's teacher accrued where no reasonable finder of fact could believe that a boy molested repeatedly between his thirteenth and sixteenth birthdays would not have known what was occurring); *Weathers v. Fulgenzi,* 884 P.2d 538, 541–42 (Okl. 1994) (Where repressed memory has not been alleged, but only that the sexual abuse caused the plaintiff to be incapable of realizing the harmful effect of the abuse, the plaintiff is chargeable with knowledge of facts which he ought to have discovered in the exercise of reasonable diligence); *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 622 A.2d 1388, 1394 (1993) (The plaintiff's awareness that the defendant's conduct was wrongful and legally actionable is irrelevant to a discovery rule analysis; once the plaintiff knows what was happening and who was doing it, he has the duty to investigate and to institute suit within the limitations period); *Lovelace v. Keohane,* 831 P.2d 624, 630 (Okl.1992) (Plaintiff's admission that she was aware of church teachings prohibiting sex outside of marriage contradicted her assertion she was 'blamelessly ignorant' regarding the relationship between her psychological problems and the sexual abuse); *E.W. v. D.C.H.,* 231 Mont. 481, 754 P.2d 817, 820 (1988) (Where plaintiff had always known that she had been molested and had sought help for her psychological problems since late adolescence, she was on inquiry notice of her cause of action and her failure to understand her legal rights, or the total extent of her damages, was not sufficient to toll the running of the statute of limitations).

■ In the present case, Doe does not make any claim that her memory of Minister's conduct was repressed. Doe concedes that she had known that her parents and others would not have approved of her sexual relationship with Minister and would have believed that Minister was harming her. Also, Doe admits that she was aware at all

relevant times that her sexual relationship with Minister was prohibited by church teaching. Doe understood and believed that Minister might lose his job or be arrested if the conduct were discovered. Finally, Doe was repeatedly advised by her mental health care professionals that she was the victim of Minister's abuse and that it was detrimental to her emotional and mental health.

The sexual relationship ended in 1988 when Doe was twenty years-old. It is not possible that a reasonable person in Doe's position would not have understood, on some level, that Minister's actions were wrong and had some connection to her current situation. Under Indiana's objective standard for the application of the discovery rule, we must conclude, as a matter of law, that in the exercise of ordinary diligence, Doe should have discovered that she had sustained injury as a result of Minister's abusive acts in excess of two years before her lawsuit was filed. Accordingly, her action is time-barred.

## II.

### Doctrine of Fraudulent Concealment

■ Doe argues that the Church Defendants are estopped from asserting the statute of limitations under the doctrine of fraudulent concealment which will operate to estop a defendant from asserting the statute of limitations 'when he has, either by deception or by a violation of duty, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action.' *Fager*, 610 N.E.2d at 251 (Citing *Guy v. Schuldt*, 236 Ind. 101, 107, 138 N.E.2d 891, 894 (1956)). Doe asserts that Minister concealed Doe's cause of action through deception by representing to her that he loved her and that sexual activity was a part of the accepted counseling process. Doe also asserts that the doctrine operates to toll the statute because Minister breached a fiduciary duty owed to Doe as a minister. *See A.M.*, 669 N.E.2d at 1037–38 (Doctrine of fraudulent concealment asserted by child sexual abuse victim based on breach of fiduciary duty incident to priest-parishioner relationship).

■ The doctrine of fraudulent concealment does not establish a new date for the commencement of the statute of limitations but rather creates an equitable exception. *Fager*, 610 N.E.2d at 251. Instead of a full statutory limitations period within which to act, a plaintiff must exercise due diligence in commencing her action after the equitable grounds cease to operate as a valid basis for causing delay. *Id.* Moreover, to avoid the time-bar imposed by the statute of limitations under the doctrine of fraudulent concealment, the plaintiff must show that he used due diligence to detect the fraud. *Lambert v. Stark*, 484 N.E.2d 630, 632 (Ind.Ct. App.1985), *trans. denied.* For the doctrine of fraudulent concealment to apply, Indiana law requires, among other things, a showing of reasonable care and due diligence on the part of the plaintiff. *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1106 (7th Cir.Ind. 1985). When the plaintiff obtains information that would lead to the discovery of the cause of action through ordinary diligence, the statute of limitations begins to run, regardless of any fraudulent concealment perpetrated by defendant. *Adams v. Luros*, 406 N.E.2d 1199, 1203 (Ind.Ct.App.1980). The *E.J.M.*, 622 A.2d 1388, court held:

> We find appellant's allegations regarding Father Pinkowski's assurances that the [abusive sexual] acts being performed on appellant were necessary for his spiritual development insufficient to constitute fraudulent concealment. We have previously held that a defendant's general assurances that a situation or condition being experienced by the plaintiff is normal do not rise to the level of fraudulent concealment where the plaintiff's own common sense should inform him that he has been injured.
>
> This is precisely the situation presented here. The alleged abuse in this case continued for years and only ended when appellant was twenty years old. It is beyond comprehension that appellant would not or should not have questioned whether his relationship with Father Pinkowski was truly aimed solely at appellant's preparation for the priesthood.

622 A.2d at 1395 (Citations omitted). Similarly, the *E.W.*, 754 P.2d 817, court held:

> EW contends that [the accused molester] fraudulently concealed the wrongful nature

of his relationship with EW. We find EW's argument strained at best. . . . While [the accused's] representations may have initially constituted a species of fraudulent concealment, such representations are not sufficient to cure EW's subsequent knowledge.

There is no indication that EW is incompetent or that she psychologically repressed the attacks. It is therefore not unreasonable to assume that EW, upon reaching majority, was aware that child molestation was a wrongful act; nor does she deny her awareness. The furor caused by the disclosure of the molestation and EW's subsequent references to molestation as a child when she visited psychologists further support this conclusion.

Reliance upon a fraudulent representation must be reasonable. EW's continued reliance on statements made [long ago at the time of the molestations] is not. At the very least, the state of facts was sufficient to cause a reasonable person to inquire.

754 P.2d at 821.

We reject Doe's claim of fraudulent concealment on the same basis that we rejected her claim of delayed discovery; Doe failed to demonstrate ordinary diligence in discovering her cause of action. After reaching the age of majority, Doe was bombarded by information from her therapists that Minister's actions were wrong and harmful to her. The sexual abuse ended in 1988 when Doe was twenty years old. Her delay in filing the present lawsuit until 1993 was unreasonable as a matter of law.

### III.

*Doctrine of Continuing Wrong*

■ Finally, Doe claims that her action is saved by the doctrine of continuing wrong. Doe argues that, even though the sexual relationship had ended in 1988, Minister continued to abuse his relationship with Doe to manipulate, dominate, control, and abuse her. Doe points out that Minister continued to express love and affection for her in 1991 after she had warned him that she had told her family about their secret, sexual relationship.

■ The doctrine of continuing wrong is simply a legal concept used to define when an act, omission or neglect took place. *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind. 1991). The doctrine applies when an entire course of conduct combines to produce an injury. *Id.* The statutory period of limitations begins to run at the end of the continuing conduct. *Follett v. Davis*, 636 N.E.2d 1282, 1284 (Ind.Ct.App.1994), *trans. denied.* However, the doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point. *Yarnell v. Hurley*, 572 N.E.2d 1312, 1315 (Ind.Ct.App.1991) (Medical malpractice claim accrued when plaintiff was correctly diagnosed even though he continued treatment with the doctor who missed the diagnoses), *trans. denied; Ricard v. Elgin, Joliet & Eastern Railway Co.*, 750 F.Supp. 372, (N.D.Ind.1990) (The continuing tort doctrine does not toll the limitations period where plaintiff has knowledge of the fact of his injury and its possible cause, yet continues to work under the damaging conditions).

We interpret Doe's argument as a permutation of her fraudulent concealment/abuse of fiduciary relationship theory. As noted earlier, Doe was bombarded by facts which should have led to the discovery of her cause of action by the time the sexual abuse ended in 1988. Thus, her action accrued, and the statute of limitations expired, many years before she filed her lawsuit despite the fact that Minister continued to exert his corrupt influence over her.

### CONCLUSION

The trial court correctly determined that Doe's action was time-barred. Therefore, we find no error.

Judgment affirmed.

BAKER and BARTEAU, JJ., concur.