Ivy A. **BURTON** and Robert E. Burton, **Appellants–Plaintiffs,**

v.

Daniel P. **ELSKENS, M.D., Appellee–Defendant,**

Sally **McCarty,** Commissioner, Indiana Department of Insurance, **Appellee– Third Party Respondent.**

No. 79A02–9911–CV–747.

Court of Appeals of Indiana.

July 6, 2000.

Rehearing Denied Sept. 11, 2000.

Jay T. Seeger, Seeger & Forbes, Lafayette, Indiana, Attorney for Appellants.

Kevin Charles Murray, Julia Blackwell Gelinas, Locke Reynolds LLP, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellants-plaintiffs Ivy A. Burton and Robert E. Burton (collectively, the Burtons) appeal the trial court's entry of summary judgment in favor of appellee-defendant Dr. Daniel P. Elskens. Specifically, the Burtons contend that the trial court erroneously determined that their medical malpractice claim against Dr. Elskens was barred by the statute of limitations.

### FACTS

The facts most favorable to the Burtons are that on October 12, 1994, Dr. Elskens performed a craniotomy and clipping of a basal tip aneurysm on Mrs. Burton. Almost immediately after the surgery, Mrs. Burton suffered a stroke which resulted in her hospitalization from October 12, 1994, until she was discharged on November 25, 1994. After Mrs. Burton's discharge from the hospital, Dr. Elskens continued to monitor Mrs. Burton's progress regarding her recovery from the stroke. Dr. Elskens administered postoperative outpatient treatment to Mrs. Burton on December 6, 1994, January 3, 1995, April 18, 1995, and May 23, 1995.

On May 19, 1997, the Burtons filed a proposed complaint with the Indiana Department of Insurance against Dr. Elskens. The complaint alleged that Dr. Elskens was negligent in his treatment of Mrs.

Burton, and asserted that he failed to meet the appropriate standard of care in performing the surgical procedure. The Burtons also claimed that Dr. Elskens negligently rendered postoperative care. Moreover, Mr. Burton made a claim for loss of companionship and consortium.

Thereafter, Dr. Elskens tendered the required filing fee and submitted the Burtons' proposed complaint to the trial court.[1] On April 20, 1999, Dr. Elskens filed a motion for summary judgment, claiming that the action was time-barred. Specifically, Dr. Elskens noted that the Burtons filed their proposed complaint against him two years, five months, and twenty-four days after the last alleged in-patient follow-up care and treatment. The Burtons opposed the motion, claiming that the doctrine of "continuing wrong" tolled the statute of limitations. On July 6, 1999, the trial court granted Dr. Elskens' motion for summary judgment. The Burtons now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

In reviewing the trial court's grant of summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App.1997). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 132 (Ind.Ct.App.1997), *trans. denied.* Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Ind.Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *City of Elkhart v. Agenda: Open Government, Inc.*, 683 N.E.2d 622, 625 (Ind.Ct.App.1997), *trans. denied.* The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993).

### II. The Burtons' Claims

The Burtons contend that the entry of summary judgment in Dr. Elskens' favor was erroneous. Specifically, they maintain that their complaint was timely, inasmuch as it was filed "within two years after the end of the doctor-patient relationship." Appellant's brief at 3.

To resolve the issue that the Burtons present today, we first note the relevant provisions of our statute of limitations, IND. CODE § 34-18-7-1(b):

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect....

In an effort to avoid the two-year statute of limitations set forth above, the Burtons posit that the doctrine of "continuing wrong" prevents their claims from being time-barred. In certain circumstances, this doctrine will permit a patient to bring an action for medical malpractice within two years after the date of the patient's last encounter with the physician. *See Follett v. Davis*, 636 N.E.2d 1282, 1284. (Ind.Ct.App.1994), *trans. denied.* The

1. In accordance with IND. CODE § 34-18-11-2, "[t]he filing of a copy of the proposed complaint and motion with the clerk confers jurisdiction upon the court over the subject matter and the parties to the proceeding for the limited purposes stated in this chapter."

The trial court has jurisdiction regarding the motion for summary judgment while the claim is pending before the Department of Insurance prior to the issuance of a Medical Review Panel opinion. *See Griffith v. Jones,* 602 N.E.2d 107, 110–11 (Ind.1992).

statutory period of limitations begins to run at the end of the continuing wrongful act. *Id.* It must be demonstrated that the alleged injury-producing conduct was of a continuous nature. *Cyrus v. Nero,* 546 N.E.2d 328, 331 (Ind.Ct.App.1989).

We note that in *Follett,* the plaintiff became a patient of the defendant-clinic in 1978, and had her first office visit with the Dr. Davis, the defendant-physician, in 1987. *Follett,* 636 N.E.2d at 1283. In the spring of 1988, Follett discovered a lump in her right breast and made an appointment to see Dr. Davis. When Follett arrived at the clinic for her scheduled appointment on April 1, 1988, she was informed that there was no record of her appointment and that Dr. Davis was not at the clinic that day. The clinic employees then directed Follett to radiology where she underwent a mammogram. Follett was then informed that Dr. Davis would notify her in the event that problems were apparent from the mammogram. Otherwise, Follett was to assume that everything was normal. *Id.* at 1283.

Following the mammogram, the radiologist interpreted the test as abnormal, yet left it to Dr. Davis to determine whether a biopsy should be ordered. Dr. Davis subsequently determined that the radiologist's report was negative for malignancy. *Id.* Follett then telephoned the clinic on April 6, 1990 regarding the test results. She was again informed by clinic personnel that there was no cause to be concerned unless Dr. Davis contacted her. Follett never heard from Dr. Davis regarding the mammogram.

Follett returned to the clinic in September, 1990 because she was experiencing pain that was associated with the lump that had been discovered. A mammogram performed that day revealed findings consistent with cancer. Dr. Davis subsequently referred Follett to a surgeon for a biopsy and further treatment. Thereafter, the biopsy confirmed the presence of cancer in October of 1990.

On August 20, 1992, Follett filed a proposed complaint with the Department of Insurance, alleging that Dr. Davis was negligent in refusing to follow up on the initial mammogram results. Thereafter, Dr. Davis and the clinic moved for summary judgment, contending that Follett's claim was barred by the two-year statute of limitations. In response, Follett argued that the wrong she suffered was a continuing wrong and, therefore, the limitations period did not begin to run until the end of the continuing wrongful act. On appeal, this court agreed with Follett and reasoned as follows:

> The evidence most favorable to Follett shows that, after she had found a lump in her breast, she went to Dr. Davis, her regular obstetrician and gynecologist, and the Clinic for aid. Dr. Davis and the Clinic, through the Clinic's employees and agents, undertook to treat her ailment.... Dr. Davis and the Clinic should not benefit from the fact that they did not act for a period of nearly two and one-half years when it is their continuous omission to act, in the face of their undertaking to do so, which is the basis of Follett's complaint.

*Id.* at 1284; *see also Smith v. Washington,* 716 N.E.2d 607, 616 (Ind.Ct.App.1999) (plaintiff who first became aware of information that he may have been a victim of medical malpractice when consulting with a new opthalmologist was entitled to pursue action pursuant to continuing wrong doctrine when the evidence demonstrated that original physician failed to make a specific diagnosis of glaucoma, failed to keep plaintiff informed of surgical options and failed to successfully treat plaintiff's condition).

■ Unlike the circumstances presented in *Follett* and *Smith,* it is apparent from the record that Dr. Elskens' alleged malpractice and injury to Mrs. Burton occurred on October 12, 1994. Mrs. Burton experienced an immediate and recognized complication following the surgical procedure. Dr. Elskens instantly diagnosed the

stroke during Mrs. Burton's hospitalization, and thereafter began treating her for those complications. Under these circumstances, we cannot say that there was an injury producing conduct of a continuous nature similar to that which was present in *Follett* and *Smith.* Inasmuch as the Burtons did not file their claim until May 19, 1997, the trial court properly concluded that their claim was time-barred.

Notwithstanding the above discussion, the Burtons maintain that *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999), controls the disposition of this case. In *Martin,* the plaintiff had a cause of action for medical malpractice that accrued before the applicable statutory period had run but did not discover that she had it, and in the exercise of reasonable care could not have discovered it. *Id.* at 1284. Thus, our supreme court reasoned that the application of the statute of limitations to terminate her accrued claim before it reasonably could be brought was an unreasonable and unconstitutional impairment of an existing and recognized remedy. *See id.* at 1284–85. Moreover, the *Martin* court noted that the statute of limitations violated the privileges and immunities clause of the Indiana Constitution with respect to a particular class of plaintiffs who could not have discovered their cause of action and filed their proposed complaint within two years of the alleged negligent act and the date of the known injury. *Id.* The court observed that the statute of limitations violated this provision because it impermissibly "foreclosed [Martin] from bringing her malpractice suit when, unlike many other medical malpractice plaintiffs, she could not reasonably be expected to discover the asserted malpractice and resulting injury within the two-year period given the nature of the asserted malpractice and of her medical condition." *Id.* at 1282. The *Martin* court went on to note that:

> The medical malpractice statute of limitations is unconstitutional as applied when the plaintiff did not know or, in the exercise of reasonable diligence,

could not have discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on the plaintiff's access to the courts and ability to pursue an otherwise valid tort claim.

*Id.*

Unlike the circumstances in *Martin,* Mrs. Burton did not suffer from a disease with a long latency period and her condition did "not manifest significant pain or debilitating symptoms until several years after [an] initial diagnosis or misdiagnosis." *Id.* Nor do the circumstances here dictate that Mrs. Burton's condition was one which the Burtons, in the exercise of reasonable diligence, could not have discovered within the two-year statute of limitations. *See id.* To the contrary, as noted above, Burton's stroke was immediately diagnosed by Dr. Elskens and he began rendering treatment for that condition. The record is devoid of any reason that the Burtons could not have discovered their cause of action and filed their proposed complaint within two years of the date of the alleged negligent act and the date of the known injury. As a result, Mrs. Burton does not fit within the class of patients discussed in *Martin* because her injury was immediately diagnosed and the Burtons could have discovered their cause of action in a timely fashion. Thus, the rationale espoused in *Martin* is inapplicable to the case at bar, and the trial court properly determined that the Burtons' cause of action was time-barred pursuant to I.C. § 34–18–7–1(b).

*CONCLUSION*

In light of our discussion above, we conclude that the Burtons may not successfully claim that the doctrine of continuing wrong prevented their claims against Dr. Elskens from being time-barred. Moreover, because the designated evidence demonstrated that the Burtons could have discovered their cause of action before the statute of limitations had expired and

failed to file their claim within that period of time, the trial court properly entered summary judgment in favor of Dr. Elskens.

Judgment affirmed.

RILEY, J., and KIRSCH, J., concur.