

FILED

Nov 21 2019, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Fred Schultz
Gerald Mayer
Greene & Schultz
Bloomington, Indiana

ATTORNEY FOR *AMICUS CURIAE*
INDIANA TRIAL LAWYERS
ASSOCIATION

Jerry Garau
Garau Germano, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS NURSE PRACTITIONER

Robert C. Brandt
Courtney David Mills
Riley Bennett Egloff LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Peter Strickholm, Leila
Strickholm (Mother and
Guardian), and Alfred
Strickholm (Father and
Guardian),

*Appellants/Petitioners,*

v.

Anonymous Nurse Practitioner,

*Appellee/Respondent,*

and

November 21, 2019

Court of Appeals Case No.
19A-MI-696

Appeal from the Marion Superior
Court

The Honorable Michael D.
Keele, Judge

Trial Court Cause No.
49D07-1802-MI-4253

Anonymous Practice Group and
Commissioner of the Indiana
Department of Insurance,

*Third-Party Appellees/Respondents.*

**Bradford, Judge.**

# Case Summary[1]

[1]     On December 1, 2015, Anonymous Nurse Practitioner ("Anonymous NP")
saw Peter Strickholm at Anonymous Practice Group in Bloomington and
prescribed Lisinopril-Hydrochlorothiazide ("Lisinopril-HCTZ") to control his
high blood pressure.  On December 8, 2015, Peter returned to Anonymous
Practice Group, and a licensed practical nurse ("LPN") checked his blood
pressure and noted it in an electronic report.  On December 11, 2015, at the
latest, Anonymous NP reviewed the report and approved it without ordering
any further testing or any other change in Peter's course of treatment.  On
December 15, 2015, Peter was admitted to a hospital with low sodium levels
and suffered cardiopulmonary arrest the next day, resulting in permanent
cognitive impairment.

[2]     On December 4, 2017, Peter and his parents/guardians, Alfred and Leila
Strickholm (collectively, "the Strickholms"), filed a proposed medical

---

[1]  We held oral argument in this case on October 29, 2019, in Indianapolis.  We would like to commend
counsel for the high quality of their written submissions and oral advocacy.

malpractice complaint with the Indiana Department of Insurance ("IDOI"). On February 1, 2018, Anonymous NP filed her petition for preliminary determination of law and summary judgment in the trial court. On March 1, 2019, the trial court granted summary judgment in favor of Anonymous NP, concluding that the designated evidence established that Anonymous NP did not provide any medical care to Peter after December 1, 2015, thus rendering the Strickholms' complaint late by three days. The Strickholms contend, *inter alia*, that the trial court abused its discretion in entering summary judgment because there is a genuine issue of material fact as to whether Anonymous NP provided medical care to Peter after December 4, 2015. Because we agree, we reverse and remand for trial.

# Facts and Procedural History

[3] On October 29, 2015, the then-fifty-seven-year-old Peter saw Anonymous NP for an "Establish New Patient" visit at Anonymous Practice Group to establish her as a primary-care provider. Appellant's App. Vol. II p. 60. Peter's blood pressure during the visit was 164/96 mmHg. On December 1, 2015, Peter returned to Anonymous Practice Group for a "Comprehensive Care Visit[,]" and his blood pressure this time was 176/94 mmHg at 8:05 a.m. and 179/100 mmHg at 8:25 a.m. Appellant's App. Vol. II p. 58. Anonymous NP prescribed Lisinopril-HCTZ to Peter to control his high blood pressure and recommended that he return for a blood pressure check the next week.

[4] On December 8, 2015, Peter again returned to Anonymous Practice Group for a "Nurse Check" to have his blood pressure checked. Although there is some

dispute as to whether Anonymous NP was present that day, the blood pressure check was conducted by an LPN. Peter's blood pressure was 140/110 mmHg. The LPN electronically conveyed the test result to a physician in the office. The physician responded electronically and stated, "systolic much improved but diastolic still high, would recheck in 1–2 weeks and if still elevated then increase lisinopril[.]" Appellant's App. Vol. II p. 214. On December 11, 2015, at the latest, Anonymous NP electronically reviewed and approved the LPN's report of the "Nurse Check" but did not recommend any further testing or treatment at the time. Appellant's App. Vol. II p. 56.

[5] On December 15, 2015, Peter arrived at the Bloomington Hospital emergency room with altered mental status. Peter was diagnosed with, *inter alia*, hyponatremia, or low sodium. Peter was admitted, and the next day he suffered cardiopulmonary arrest in the Hospital's intensive-care unit. Peter was revived, but he had suffered a hypoxic event which caused cognitive impairment.

[6] On December 4, 2017, the Strickholms filed their proposed complaint against Anonymous NP with the IDOI. The Strickholms alleged medical negligence, specifically that Anonymous NP had breached the relevant standard of care in her treatment of Peter up to and through at least December 8, 2015, causing harm to Peter Strickholm. On February 1, 2018, Anonymous NP filed her petition for preliminary determination of law and summary judgment in the trial court. Anonymous NP alleged that the cause of action filed by the Strickholms was not timely filed and alleged that the last day she provided any

health care to Peter was December 1, 2015, when she prescribed the Lisinopril-HCTZ.

[7]　On February 6, 2019, the trial court heard argument on Anonymous NP's motion for preliminary determination of law and summary judgment and, on March 1, 2019, granted summary judgment in favor of Anonymous NP. *Id.* at 12, 13. The trial court concluded that the designated evidence established as a matter of law that Anonymous NP did not provide any medical care to Peter after December 1, 2015, thus rendering the Strickholms' complaint late by three days. Specifically, the trial court concluded that (1) the continuing-wrong doctrine did not apply to Anonymous NP's single act of prescribing Lisinopril-HCTZ to Strickholm; (2) Anonymous NP did not provide any health care to Peter on December 8, 2015, because she did not personally see him; and (3) her December 11, 2015, review and approval of the report generated by the LPN did not constitute the provision of care.

# Discussion and Decision

[8]　The Strickholms contend that the trial court erred when it entered summary judgment in favor of Anonymous NP. When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). To prevail on a motion for summary judgment, a party must demonstrate that the undisputed

material facts negate at least one element of the other party's claim. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. Once the moving party has met this burden with a *prima facie* showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id*. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id*. "In determining whether there is a genuine issue of material fact precluding summary judgment, all doubts must be resolved against the moving party and the facts set forth by the party opposing the motion must be accepted as true." *Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 438–39 (Ind. Ct. App. 1990), *trans. denied*.

[9] The Indiana Medical Malpractice Act ("the MMA") governs medical malpractice claims against health care providers, with malpractice defined as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. The MMA defines health care as follows: "Health care means an act or treatment performed or furnished, or that should have been performed or furnished, by a healthcare provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13.

> [T]he MMA [is] a statute that applies to claims of personal injury or death proximately caused by a "health care provider," as that term is defined in the MMA. […] We will usually refer to this type of claim in this opinion as "medical malpractice" or just "malpractice." The MMA did not create or establish the medical malpractice claim; it only imposed procedural requirements on

the prosecution of them. *Chamberlain v. Walpole,* 822 N.E.2d 959, 961 (Ind. 2005).

> One of the requirements of the MMA is that a proposed medical malpractice complaint first be filed with the [IDOI] for review by a medical panel before the complaint is filed in court.

*Ellenwine v. Fairley*, 846 N.E.2d 657, 660 (Ind. 2006).

[10] The only issue in this appeal is whether there is a genuine issue of material fact concerning whether the Strickholms' proposed complaint was timely. "A claim […] may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect[.]" Ind. Code § 34-18-7-1. The existence of a genuine issue of material fact as to whether (1) Anonymous NP provided any health care to Peter on or after December 4, 2015, or (2) the continuing-wrong doctrine applies to extend the deadline for filing past December 4, 2017, precludes the entry of summary judgement in favor of Anonymous NP on the question of timeliness.

[11] We choose to first address the Strickholms' allegation that Anonymous NP provided health care to him after December 4, 2015. The Strickholms contend, *inter alia*, that the trial court erred in concluding as a matter of law that Anonymous NP did not provide health care to Peter on December 8 or 11, 2015, when, at some point, she allegedly (1) saw him personally during his December 8 appointment and/or (2) reviewed and approved the report

regarding his blood-pressure test results on December 11, 2015.[2]  Because both of these dates are later than December 4, 2015, a genuine issue of material fact as to either one will get the Strickholms past summary judgment on the issue of timeliness.

[12]  We choose to address the claim that there is a genuine issue of material fact that Anonymous NP's December 11, 2015, act of reviewing and approving the record of Peter's earlier visit constituted the provision of health care, and we find it to be dispositive.  Anonymous NP characterizes her approval as merely "an administrative function to close the open note in Peter Strickholm's medical record[,]" Appellee's Br. p. 23, and contends that the only response to Peter's December 8, 2015, visit was made by the physician in the office that day and/or the LPN as a matter of law.  We have little hesitation in concluding otherwise.  As mentioned, the MMA concerns health care that was provided or "*that should have been provided*, by a health care provider, to a patient."  Ind. Code § 34-18-2-18 (emphasis added); *see also* Ind. Code § 34-18-7-1 ("A claim

---

[2]  It is worth noting that the Strickholms' argument that Anonymous NP's allegedly-negligent acts or omissions constituted health care is essentially the same as its continuing-wrong-doctrine argument.

> "The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury."  *Garneau v. Bush*, 838 N.E.2d 1134, 1143 (Ind. Ct. App. 2005), *trans. denied* (2006).  When this doctrine is applicable, the two-year statute of limitations period begins to run at the end of the continuing wrongful act.  *Id.*  "In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature."  *Id.*

*Szamocki v. Anonymous Dr. & Anonymous Grp.*, 70 N.E.3d 419, 424 (Ind. Ct. App. 2017), *trans. denied*.  Whether one considers Anonymous NP's allegedly-negligent acts or her allegedly-negligent omission to be free-standing acts of health care or the mere continuation of her previous act of prescribing Lisinopril-HCTZ to Peter, it seems to amount to the same thing.

[…] may not be brought against a health care provider based upon professional services or health care that was provided *or that should have been provided* unless the claim is filed within two (2) years after the date of the alleged act, *omission*, or neglect[.]") (emphases added). Even if we assume that Anonymous NP did not see Peter after December 1, 2015, there is designated evidence that December 11, 2015, was the last opportunity she had to evaluate Peter's latest test results and order further testing or further treatment. We conclude that the allegation that Anonymous NP negligently failed to act after evaluating Peter's test results generates a genuine issue of material fact regarding whether she provided health care to Peter on December 11, 2015.

[13] Anonymous NP relies on the Indiana Supreme Court's decision in *Havens v. Ritchey*, 582 N.E.2d 792 (Ind. 1991), claiming that it stands for the proposition that nonfeasance claims are limited to situations involving face-to-face encounters between patients and health care providers. This strikes us as an overbroad reading of *Havens*, which is distinguishable from this case on the facts in any event. In *Havens*, the patient, who was suffering foot pain, last visited Dr. Ritchey on July 3, 1985, and filed a proposed malpractice complaint against him for alleged misdiagnosis on October 14, 1987. *Id*. at 793. The Indiana Supreme Court concluded that Havens's malpractice action was untimely, reasoning that

> [t]here is nothing in the record to demonstrate that Ritchey would have had any occasion to diagnose Havens' problem after [July 3, 1985]. A physician cannot be under a continuing duty to review all files daily to ensure that he did not misdiagnose a condition of a patient he may not have seen for months or even

years. This duty would be completely overwhelming to health care providers, and cut against the purposes of the [MMA]. We hold that when the sole claim of medical malpractice is a failure to diagnose, the omission cannot as a matter of law extend beyond the time the physician last rendered a diagnosis. […] As a matter of law, the latest date upon which Havens' claim began to run was July 3, 1985, the last date Havens visited Dr. Ritchey's office to give Ritchey an opportunity to diagnose his condition properly.

*Id.* at 795–96.

[14] So, the Indiana Supreme Court identified July 3, 1985, as the date on which the two-year statute of limitations began to run *not* because it was the last time Havens saw Dr. Ritchey in person, but because it was the last date on which Dr. Ritchey had a reasonable opportunity to properly diagnose Havens's condition. Consequently, *Havens* does not help the Anonymous NP, as the last opportunity Anonymous NP had to diagnose Peter's condition properly was allegedly December 11, 2015. This is not a case like *Havens*, where it is being alleged that Anonymous NP failed to continuously revisit and reevaluate Peter's diagnosis long after she had last seen him or acquired any new information about his health.

[15] Anonymous NP also relies on our decision in *Szamocki,* 70 N.E.3d at 419, claiming that it too stands for the proposition that a claim of nonfeasance cannot be based on anything that occurs after the last in-person encounter between health care provider and patient. As with *Havens*, we feel that *Szamocki* cannot be read so broadly and that *Szamocki*, like *Havens*, is factually distinguishable from the instant case. In *Szamocki*, the doctor prescribed

mesalamine to Szamocki to treat "stomach issues" and Szamocki returned for a follow-up appointment on December 10, 2012. *Id*. at 422–23. Szamocki never scheduled another appointment. *Id*. at 423. In 2013, Szamocki learned that she was suffering renal failure, and filed a proposed complaint against the doctor on February 25, 2015, alleging negligent prescription of mesalamine and failure to monitor her renal function. *Id*. In ruling that Szamocki's malpractice complaint was untimely, we noted that "[t]he last time that [the doctor] saw Szamocki was on December 10, 2012. This was the last opportunity that [the doctor] would have had to monitor (or fail to monitor) Szamocki's renal function while she was taking mesalamine." *Id*. at 425–26. So, as in *Havens*, it was the fact that the last appointment was the last opportunity the doctor had to properly diagnose the patient was dispositive, not that it involved a face-to-face encounter. Indeed, we recognized as much in *Szamocki*: "Obviously, we can envision countless scenarios where other facts would come into play, and the last physician–patient encounter will not be dispositive in determining whether an entire course of care resulted in a continuing wrong in the context of a patient's claim for failure to monitor." *Id*. at 427. We conclude that this case represents one of those countless other scenarios. Anonymous NP's reliance on *Havens* and *Szamocki* is unavailing.[3]

---

[3] *Havens* and *Szamocki* are both cases in which the claims were evaluated pursuant to the continuing-wrong doctrine. We find them to be instructive, however, because, as mentioned, the Strickholms' claim that Anonymous NP continued to provide health care to Peter is essentially a continuing-wrong claim in this case.

# Conclusion

[16] We conclude that there is a genuine issue of material fact as to whether Anonymous NP provided health care to Peter on December 11, 2015. Consequently, we reverse the trial court's entry of summary judgment in favor of Anonymous NP and remand for trial on the question of timeliness.

[17] We reverse the judgment of the trial court and remand.

Vaidik, C.J., and Altice, J., concur.