**Betty J. KEEP, Appellant–Plaintiff,**

v.

**NOBLE COUNTY DEPARTMENT OF PUBLIC WELFARE a/k/a Noble County Division of Family and Children Services and Noble County, Appellees–Defendants.**

No. 57A04–9709–CV–371.

Court of Appeals of Indiana.

June 23, 1998.

---

4. Specifically, I.C. 12–26–7–2(b)(2) (Burns Code Ed.Repl.1997).

5. Specifically, I.C. 12–26–7–2(b)(4) (Burns Code Ed.Repl.1997).

Frank C. Capozza, Indianapolis, Kevin L. Likes, Auburn, for appellant-plaintiff.

Christopher C. Myers, Fort Wayne, for appellees-defendants.

## OPINION

BAKER, Judge.

Appellant-plaintiff Betty J. Keep appeals the trial court's grant of summary judgment in favor of the Noble County Department of Public Welfare (DPW) and Noble County. Specifically, Keep claims that the trial court erroneously determined that her cause of action against both defendants was barred by the notice provisions of the Indiana 'Tort Claims Act and the two-year statute of limitations.

### FACTS

The facts most favorable to Keep reveal that in 1958, Keep contacted Talitha Fiandt,

the director of the DPW, expressing her desire to adopt an infant boy. In late December of that year, Fiandt informed Keep that a "fine healthy boy" who came "from a good background" was available for adoption. Record at 96, 132. On December 23, 1958, three-week-old G. was delivered to Keep.

When G. was nearly two years old, Keep recognized that he was a "special needs" child because he would not talk. R. at 135. It was eventually determined that G. had a severe hearing and learning disability and suffered from a permanent mental deficiency. R. at 92. Keep also learned that G.'s I.Q. was approximately sixty-eight.

Sometime in late 1991 or 1992, G. asked Keep if he had any brothers or sisters. In response, Keep contacted Hugh Fowler, a "searcher" who assisted adoptees locate their birth parents and siblings. On September 22, 1993, Keep requested and obtained certain redacted records of G.'s birth and adoption from the DPW. The documents indicated that G. was born on December 5, 1958, that G.'s mother was born on March 5, 1946, and that she had become pregnant at age twelve. The records also revealed that G.'s mother had suffered a severe case of measles while she was pregnant with G. and had an I.Q. of approximately eighty-six. The DPW indicated that no information was available regarding G.'s father. Keep also met with Dennis Graft, an attorney with the DPW. At that meeting, Graft informed Keep that he suspected G. was a product of an incestuous relationship. However, Graft did not state any basis for his belief.

As Keep continued to search for the full name of G.'s birth mother, she eventually learned the mother's last name from the DPW. R. at 139. Fiandt then told Keep that G.'s mother became pregnant when she was twelve years old. Sometime in 1994, Fowler informed Keep of the mother's full name. On July 8, 1994, Keep spoke with the mother on the telephone who told her that G.'s father

was her fourteen-year-old brother. Keep confirmed this information on November 4, 1994, when she obtained unredacted copies of G.'s records from the DPW.

Thereafter, Keep retained legal counsel on December 30, 1994. Keep acknowledged that she did not take any action against the DPW after initially learning about G.'s birth mother in September of 1993 because her husband did not want her to pursue the matter. R. at 166. On January 3, 1995, Keep filed a tort claim notice with the Attorney General's office which was received on January 5, 1995. She then filed a two-count complaint against Noble County and the DPW on November 27, 1995, requesting damages for the DPW's negligent and deceitful withholding of information regarding G.'s background prior to the adoption. Specifically, Keep pointed to the DPW's failure to provide her with the mother's low I.Q., that the mother had contracted measles during the course of her pregnancy, that G.'s mother was twelve years old when she became pregnant, and that G.'s birth father was her fourteen-year-old brother.

In February and March of 1997, both the DPW and Noble County filed motions for summary judgment claiming that the notice provisions of the Indiana Tort Claims Act [1] and the two-year statute of limitations [2] for personal injuries barred Keep's cause of action. On May 28, 1997, the trial court granted their motions for summary judgment, determining that Keep's cause of action was barred because her claim had accrued no later than September 22, 1993 when Keep obtained the information from the DPW and Graft regarding G. and the mother's background. Keep now appeals.

## DISCUSSION AND DECISION

### I. Standard Of Review

When reviewing the grant of a motion for summary judgment, we apply the same standard as the trial court. *Henshilwood v. Hendricks County*, 653 N.E.2d 1062, 1065 (Ind.Ct.App.1995), *trans. denied.* We re-

---

1. IND.CODE § 34–4–16.5–7 provides in relevant part as follows: "A claim against a political subdivision is barred unless notice is filed with: (1) the governing body of that political subdivision ... within one hundred eighty (180) days after the loss occurs."

2. IND.CODE § 34–1–2–2(1) provides that a cause of action for injuries to the person must be commenced within two years after the cause of action has accrued.

solve any doubt as to any fact, or inference to be drawn therefrom, in favor of the non-moving party. *Id.* Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C).

■ A statute of limitations defense may properly be raised in a motion for summary judgment. *Honeywell, Inc. v. Wilson,* 500 N.E.2d 1251, 1252 (Ind.Ct.App.1986), *trans. denied.* When the moving party asserts and presumptively establishes this defense by placing the relevant designated evidence before the trial court showing there is no question that the action was untimely filed, the burden establishing the existence of material facts in avoidance of the statute of limitations defense shifts to the opponent of the motion for summary judgment. *Mack v. American Fletcher Nat'l Bank & Trust Co.,* 510 N.E.2d 725, 733 (Ind.Ct.App.1987), *trans. denied.* When the undisputed facts demonstrate that the complaint was filed after the running of the applicable statute of limitations, the trial court must enter judgment for the defendant. *INB Nat'l Bank v. Moran Elec. Serv., Inc.,* 608 N.E.2d 702, 709 (Ind.Ct. App.1993), *trans. denied.*

*II. Statute of Limitations and Tort Claim*

■ Keep contends that the trial court erroneously determined that her cause of action accrued no later than September 22, 1993, thus barring her cause of action under the two-year statute of limitations and the Tort Claims Act. Specifically, Keep contends that material facts are in dispute as to when she "knew or should have known that her cause of action had accrued," and that a reasonable trier of fact could conclude that her cause of action did not accrue until she spoke with G.'s mother on July 8, 1994. Appellant's Brief at 11.

■ In order to resolve this issue, it is necessary to determine when Keep's purported cause of action accrued. Generally, a cause of action accrues when a wrongfully inflicted injury causes damage. *Monsanto Co. v. Miller,* 455 N.E.2d 392, 394 (Ind.Ct. App.1983). The cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind.1992). It is not necessary that the extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Monsanto,* 455 N.E.2d at 398.

During the meeting with DPW personnel on September 22, 1993, Keep received a direct statement from Graft regarding the suspected incestuous relationship of G.'s biological parents. That same day, Keep also learned from the DPW that G.'s mother was only twelve years old when she was pregnant with G. and that she had contracted a severe case of the measles sometime during the pregnancy. Keep's deposition testimony revealed that she realized the information supplied to her from the DPW prior to the adoption was inaccurate when she was given the above information on September 22, 1993. R. at 99–114. Keep also knew it was possible that G.'s mother was twelve years old when she gave birth "and all the other bad stuff" before she received the information from the DPW in September of 1993. R. at 39, 143, 152.

The designated evidence before the trial court and the inferences therefrom dictate the conclusion that Keep had received enough information on or before September of 1993 that she had been injured and had a cause of action against the DPW and Noble County for alleged misrepresentations regarding G.'s adoption. Therefore, the trial court properly determined that Keep's cause of action accrued no later than September 22, 1993. As a result, the tort claim notice Keep filed on January 3, 1995, and the complaint for damages filed on November 27, 1995 were untimely. The trial court properly granted summary judgment in favor of the DPW and Noble County.

Judgment affirmed.

SULLIVAN and KIRSCH, JJ., concur.