C & E CORPORATION and J. Edward Ramsey, Appellants–Plaintiffs,

v.

RAMCO INDUSTRIES, INC. f/n/a R.I. Corporation, Lincoln National Life Insurance Company, and Lincoln National Investment, Inc., Appellees–Defendants.

No. 20A03–9903–CV–119.

Court of Appeals of Indiana.

Oct. 19, 1999.

Alan L. Weldy, Yoder, Ainlay, Ulmer & Buckingham, LLP, Goshen, Indiana, Attorney for Appellants.

Donald A. Murday, Peterson & Ross, Chicago, Illinois, Melanie M. Dunajeski, Beckman, Kelly & Smith, Hammond, Indiana, Attorneys for Appellees.

## OPINION

KIRSCH, Judge

J. Edward Ramsey and C & E Corporation (collectively "Ramsey") appeal the trial court's decision to grant the motion to dismiss filed by Lincoln National Life Insurance Company and Lincoln National Investment Management, Inc. (collectively "Lincoln"), raising the following issue for review: whether the continuing wrong theory applies to this claim of tortious interference with contract.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In December 1993, R.I. Corporation ("R.I.") entered into a contract to buy Ramco Industries, Inc. ("Ramco") from Ramsey. The contract required R.I. to make five annual payments to Ramsey as part of the purchase price. The amount of each payment was to be determined by a formula based on earnings performance.

In 1994, the parties disputed the amount that was due under the formula and submitted the matter to arbitration. On Oc-tober 18, 1995, the arbitrator determined that R.I. owed Ramsey an additional $168,335 for the 1994 payment. On October 19, 1995, Ramsey issued a formal written demand for the amount due him. The following day, Lincoln wrote a letter to Ramsey and R.I., informing them of its "determination hereby to block ... any payment representing 1994 performance earnout." *Record* at 92.

In December 1996, R.I. paid Ramsey the money due according to the arbitrator's award. In March 1998, Ramsey filed its First Amended Complaint against R.I. and Lincoln. Ramsey claimed that Lincoln's attempts to block payment of the installment constituted tortious interference with contract. Lincoln filed a motion to dismiss, claiming the two-year statute of limitations barred Ramsey's claim. The trial court agreed, and dismissed Ramsey's claim. We granted Ramsey's petition for interlocutory appeal of this order according to Indiana Appellate Rule 4(B)(6).

## DISCUSSION AND DECISION

■ A motion to dismiss under Ind. Trial Rule 12(B)(6) is made to test the legal sufficiency of the claim, not the supporting facts. *Hosler ex rel. Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193, 196 (Ind. Ct.App.1999). When reviewing a T.R. 12(B)(6) motion to dismiss, we view the pleadings in the light most favorable to the non-moving party, and draw every reasonable inference in favor of that party. *Minks v. Pina*, 709 N.E.2d 379, 381 (Ind. Ct.App.1999). We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint. *Burress v. Indiana Farmers Mut. Ins. Group*, 626 N.E.2d 501, 503 (Ind.Ct.App.1993), *trans. denied* (1994). Moreover, we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record. *Id.* When reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must deter-

mine if the court erred in its application of the law. *Novicki v. Rapid–American Corp.*, 707 N.E.2d 322, 323 (Ind.Ct.App. 1999).

The parties do not dispute the facts or the relevant dates. Therefore, the only issue is whether Ramsey's claim is time-barred. The parties also agree that the two-year statute of limitations set forth at IC 34–1–2–2 applies. Ramsey's suit was filed more than two years after Lincoln's letter, but within two years of when it received the disputed payment.

Ramsey argues that Lincoln's interference with its contract with R.I. constitutes a continuing wrong that did not abate until it received payment under the contract in December 1996. It contends, therefore, that the statute of limitations was tolled until that date. Lincoln maintains that the statute of limitations began to run when it sent the letter on October 20, 1995. It argues that the continuing wrong theory does not apply where the complained-of action is a single act, rather than a number of actions occurring over a period of time that constitute a unified course of conduct.

■ Generally, a cause of action accrues when a wrongfully inflicted injury causes damage. *Keep v. Noble County Dep't of Pub. Welfare*, 696 N.E.2d 422, 425 (Ind.Ct.App.1998), *trans. denied.* It is not necessary that the extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Id.* The statute of limitations begins to run when a cause of action accrues. *Lightle v. Harcourt Management Co.*, 634 N.E.2d 858, 860 (Ind.Ct.App.1994), *trans. denied.* However, when an entire course of conduct combines to produce an injury, the conduct may constitute a continuing wrong so as to delay the running of the statute of limitations. *Frady v. Hedgcock*, 497 N.E.2d 620, 622 (Ind.Ct.App.1986), *trans. denied* (1987). Under this theory, the statutory period commences at the end of the continuing wrongful act. *Id.* The doctrine of continuing wrong has been recognized by Indiana courts as early as 1928.

In *Montgomery v. Crum*, 199 Ind. 660, 161 N.E. 251 (1928), the supreme court stated that the statute of limitations does not begin to run until the wrongdoer accomplishes an injury to another. If a continuous course of conduct is the cause of the injury, the statute does not begin to run until the injury has been produced. *Id.* at 678–89, 161 N.E. at 259. In that case, a mother sued her former husband and his parents for acting in concert to kidnap and conceal her daughter. The father first stole the child in 1912 and through various schemes kept the child for about nine years. The court held that a tort could be continuous over a period of time. The court explained:

> "Injury precedes damages. Hence damages susceptible of ascertainment resulting from injuries to person would ordinarily be the test for determining when a cause of action exists, but where, as here, 'the action is for the damages resulting from the various consequences of one continuous wrong,' the statute of limitations will not begin to run until there is a cessation of the overt acts constituting the wrong."

*Id.* at 679, 161 N.E. at 259.

The continuing wrong theory has been asserted primarily in medical malpractice cases. Where the plaintiff's harm results from a course of treatment, the argument is sometimes successful. *See Follett v. Davis*, 636 N.E.2d 1282 (Ind.Ct.App.1994) (failure to diagnose breast cancer), *trans. denied* (1995); *Ferrell v. Geisler*, 505 N.E.2d 137 (Ind.Ct.App.1987) (continuing failure to diagnose breast cancer), *trans. denied*; *Frady v. Hedgcock*, 497 N.E.2d 620 (Ind.Ct.App.1986) (long-term misdiagnosis and prescription of medications), *trans. denied* (1987). However, where the plaintiff's harm results from an isolated act, the argument is rejected. *See Babcock v. Lafayette Home Hosp., Woman's Clinic*, 587 N.E.2d 1320 (Ind.Ct.App.1992) (leaving surgical sponge in patient's pelvis and misreading x-ray); *Cyrus v. Nero*, 546 N.E.2d 328 (Ind.Ct.App.1989) (failed surgi-

cal sterilization). The theory has also been successfully applied in worker's compensation cases involving injuries produced over a period of time, *Union City Body Co. v. Lambdin*, 569 N.E.2d 373, 374 (Ind. Ct.App.1991), nuisance cases, *Keane v. Pachter*, 598 N.E.2d 1067, 1072 (Ind.Ct.App. 1992), *trans. denied*, and suits based on administrative action. *City of Lake Station v. State ex rel. Moore Real Estate, Inc.*, 558 N.E.2d 824 (Ind.1990).

The argument has met with less success in other types of cases. *See Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 211 (1981) (even though product manufacturer had a continuing duty to warn consumers of product's dangers, failure to do so was not a continuous wrong); *Konkle v. Henson*, 672 N.E.2d 450, 458–59 (Ind.Ct.App.1996) (rejecting continuing tort theory and applying discovery rule in sexual molestation case); *Associates Corp. of North America v. Smithley*, 621 N.E.2d 1116, 1121 (Ind.Ct.App.1993) (rejecting continuing wrong theory in assault and battery case). In *Smith v. Beasley*, 504 N.E.2d 1028 (Ind.Ct.App.1987), the plaintiff asserted the continuing wrong doctrine in an employment case. In *Smith*, the plaintiff was a state police officer who argued that he was entitled to a percentage pay increase under a department policy. The plaintiff filed suit for back pay six and one-half years after the policy was adopted and implemented. The defendants moved to dismiss his claim, arguing that it was barred by the statute of limitations. The plaintiff contended that his claim was not barred because the failure to award him the pay increase on each paycheck was a continuing wrong that tolled the statute of limitations. This court disagreed that the plaintiff's reduced earnings were a continuing wrong. Although the failure to award him the raise had a present impact on his salary, it did not constitute a continuing wrong. *Id.* at 1029.

■ In this case, the wrong about which Ramsey complains is Lincoln's action in blocking the 1994 payment from Ramco. It was at that point in time that Ramsey suffered a legal injury and resulting damages. His cause of action accrued when Lincoln blocked the payment that Ramco would otherwise have paid. According to the allegations of the complaint, Lincoln blocked the payment on October 20, 1995. It was at that point that injury and damages occurred and the statute of limitation began to run on Ramsey's claim against Lincoln. As in *Smith*, although the impact of Lincoln's action in sending the letter and opposing the payment continued over several months, it did not constitute a continuing wrong.

■ Moreover, the doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point. *Doe v. United Methodist Church*, 673 N.E.2d 839, 845 (Ind.Ct.App.1996), *trans. denied* (1997). In *Doe*, the plaintiff sued the defendant for damages based on a lengthy relationship involving sexual abuse that began when the plaintiff was a teenager and the defendant was a minister. Even after the sexual relationship ended, the defendant continued to express his love for the plaintiff and urged her to keep their relationship secret. The plaintiff eventually sought counseling and brought suit. The defendant claimed that the plaintiff's suit based on sexual abuse was barred by the statute of limitations. The plaintiff argued that the defendant's behavior was a continuous wrong that did not abate until the defendant stopped asserting control over her. The court stated that the statute of limitations began to run when the plaintiff discovered her injury. Even though the defendant attempted to manipulate her, the plaintiff "was bombarded by facts which should have led to the discovery of her cause of action by the time the sexual abuse ended in 1988." *Id.* at 845. The court concluded that plaintiff's claim was barred by the statute of limitations.

Here, Ramsey knew of its injury from the moment it received the October 20, 1995 letter. Ramsey does not dispute that it received Lincoln's letter in October 1995, nor does it argue that it failed to understand the ramifications of Lincoln's position. Indeed, Ramsey twice threatened to sue Lincoln for tortious interference within the limitations period. *Record* at 26, 97–102. Even under the discovery rule, the statute of limitations began to run in October 1995. Therefore, Ramsey's suit filed in March 1998 is untimely.

Affirmed.

DARDEN, J., and BROOK, J., concur.