COOPER INDUSTRIES, LLC, as successor to Studebaker Corporation, Century Indemnity Company, as successor to Indemnity Insurance Company of North America, Zurich American Insurance Company as successor to Zurich Insurance Company, Certain Underwriters at Lloyd's London and Certain London Market Insurers, Hartford Accident and Indemnity Company, Studebaker–Packard Corporation, and Studebaker Corporation, Appellants–Defendants,

v.

The CITY OF SOUTH BEND, Indiana and The South Bend Redevelopment Commission, Appellees–Plaintiffs.

No. 49A04–0511–CV–637.

Court of Appeals of Indiana.

April 11, 2007.

See also 821 N.E.2d 5.

---

Mark E. Shere, Indianapolis, IN, Dale E. Stephenson, Allen A. Kacenjar, Squire, Sanders & Dempsey L.L.P., Cleveland, OH, Mary Rose Alexander, Thomas Heiden, Latham & Watkins, L.L.P., Chicago, IL, Vicki Wright, Libby Mote, Krieg Devault, L.L.P., Indianapolis, IN, for Appellants.

George M. Plews, Jeffrey D. Featherstun, Tina M. Richards, Plews Shadley Racher & Braun Indianapolis, IN, Cheryl A. Greene, South Bend, IN, for Appellees.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Cooper Industries, LLC, ("Cooper")[1] appeals from the trial court's order partially granting a motion by the City of South Bend, Indiana and the South Bend Redevelopment Commission (collectively, "the City") for partial summary judgment. The trial court found that, as a matter of law, Cooper was the corporate successor to the liabilities of Studebaker Corporation ("Studebaker") and entered summary judgment in favor of the City on that issue. The trial court also found that the City

---

1. Because Cooper and McGraw–Edison did not merge until 2004, Cooper was not originally named in this lawsuit when it was instituted in 2003. On February 10, 2006, the trial court granted a joint motion to substitute Cooper Industries, LLC for McGraw–Edison as the named defendant. On May 3, 2006, this court issued an order providing that the named Appellant in this appeal is Cooper Industries, LLC.

could maintain its claims against Cooper under the Environmental Legal Action Statute ("ELA")[2] and under Indiana tort law. The trial court further determined the City's claims were timely as to parcels of property purchased within six years of its filing the suit. On appeal, Cooper raises several issues, but we find the statute of limitations issue dispositive. Concluding that the applicable six-year statute of limitations bars the City's claims, we reverse.

### Facts and Procedural History

Beginning in the 1850s, Studebaker, a Michigan corporation, manufactured first wagons and then automobiles in the City. Studebaker's facilities in the City ultimately covered 104 acres, including approximately 3.65 million square feet under roof. Studebaker became a diversified manufacturer of many types of industrial products in the 1950s and 1960s and continued to manufacture automobiles at its South Bend facilities until it discontinued manufacturing automobiles in December 1963, at which time Studebaker divested its automotive operations in the City.

In 1967, Studebaker combined with Worthington Corporation ("Worthington") to form a new company, Studebaker–Worthington Inc. ("Studebaker–Worthington"). In 1979, McGraw–Edison Company ("McGraw–Edison") acquired all outstanding shares of Studebaker–Worthington. In 2004, McGraw–Edison merged into Cooper, Industries, Inc. Then, Cooper Industries, Inc. merged into Cooper Industries, LLC.

Following Studebaker's divestiture of its automotive facilities in the City, the fa-

cilities were used for a variety of other operations. Subsequently, the City began acquiring property for its Studebaker Corridor Development Plan. The City planned to demolish the buildings and make the site available for disposition to a private developer. After conducting various evaluations of the former Studebaker facilities, the City determined there were significant environmental releases from Studebaker's manufacturing operations still impacting the soil and groundwater at those facilities and surrounding areas.

In March 2003,[3] the City filed this action against McGraw–Edison, which later merged into Cooper,[4] seeking to hold it liable as Studebaker's liability successor. The City seeks recovery of its costs under Indiana environmental statutes and common law tort theories.

Both sides moved for summary judgment. The trial court issued partial summary judgment, finding that as a matter of law Cooper is the corporate successor to the liabilities of Studebaker. The trial court further found that the City can maintain its claims under tort law and under the ELA, and that all of the City's claims are timely as to any property purchased within six years of its filing the suit. Cooper appeals, arguing that all of the City's claims are barred by the statute of limitations, that Cooper did not assume Studebaker's liabilities, that the City may not pursue a claim under the ELA because the City is neither the State nor a private person, and that the City's tort claims are barred under the doctrine of caveat emptor. Cooper now appeals.

---

2. The Indiana Environmental Legal Action Statute is found in Indiana Code section 13–30–9–1 et seq.

3. The City also sued Studebaker's insurance carriers seeking a declaratory judgment of coverage. This court has already resolved two issues stemming from the insurance facet

of this case. See City of South Bend v. Century Indemn. Co., 821 N.E.2d 5 (Ind.Ct.App.2005), trans denied.

4. Although the trial court's order refers to the defendant as "McGraw," we will refer to the defendant-appellant as "Cooper."

*Discussion and Decision* [5]

## I. Summary Judgment Standard of Review

The standard of review for a ruling on summary judgment is well-settled.

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by [Indiana Trial Rule 56], the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating that the trial court erred.

*Guerrero v. Allison Engine Co.,* 725 N.E.2d 479, 481 (Ind.Ct.App.2000) (quoting *Stevenson v. Hamilton Mut. Ins. Co.,* 672 N.E.2d 467, 470–71 (Ind.Ct.App.1996)).

## II. Statute of Limitations

### A. Statute of Limitations Application To Tort Claims

■ The trial court determined Cooper did not sustain an affirmative defense based on the statute of limitations. Order at 3.

"A party pleading a statute of limitations bears the burden of proving the suit was commenced beyond the statutory time allowed." *In re Paternity of K.H.,* [709 N.E.2d 1033, 1035] (Ind.Ct. App.1999). Ind.Code section 34–11–2–7 allows claims brought within six years for injury to real property. South Bend's claims are timely as to all property purchased within six (6) years of the date of this action.

*Id.* Neither Cooper nor the City challenge the trial court's application of Indiana Code section 34–11–2–7, the general statute of limitations for injury to property other than personal property.

■ A determination of whether the City's tort claims are time barred by this statute of limitations rests on when the cause of action accrued. A cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew, or in the exercise of ordinary diligence could have discovered, that an injury had been sustained as a result of the tortious act of another. *Wehling v. Citizens Nat'l Bank,* 586 N.E.2d 840, 843 (Ind.1992). The determination of when a cause of action accrues is generally a question of law for the courts to determine. *Meisenhelder v. Zipp Exp., Inc.,* 788 N.E.2d 924, 928 (Ind. Ct.App.2003) (citing *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 564 (Ind.1992)). For claims to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. *C & E Corp. v. Ramco Indus., Inc.,* 717 N.E.2d 642, 644 (Ind.Ct.App. 1999).

**5.** We heard oral argument in this case on January 18, 2006, at Purdue University in Lafayette, Indiana. We thank counsel for their advocacy and extend our appreciation to Purdue for hosting the oral argument.

■ The City's complaint was filed on March 19, 2003. Thus, we must determine if the City knew of, or could have discovered, the damage to the Studebaker property before March 19, 1997.

Cooper argues this suit is time barred because the City had comprehensive knowledge of the contamination at issue for at least fourteen years before filing suit. In support, Cooper points out that the City acquired the Transwestern Site (the location of Studebaker's former Truck Assembly plant) by donation in 1986 and at that time "figured that there would be some problems" associated with the property possibly including "USTs" and "environmental contamination." *See* Appellant's Br., Tab B # 12, 13. To assess the environmental condition of the site, the City hired two consultants. *Id.* at Tab B # 14. The first environmental consultant conducted environmental testing and its report to the City concluded that "groundwater may be transporting contaminants under" the Transwestern Site and that "a source of hydrocarbons may exist below the site." *Id.* at Tab B # 15. The second environmental consultant also collected samples in a broader area of the Studebaker Corridor and its report revealed "VOC contamination in the groundwater sample from each boring." It also found barium, cadmium, chromium and mercury in Corridor groundwater at levels up to 170 times the national drinking water standards. *Id.* at Tab B # 16.

Further, in 1990, the City formally declared the Studebaker Corridor to be a redevelopment area. *Id.* at Tab B # 17. The City hired a third consultant to conduct an environmental assessment of a broad area of the Corridor. This assessment occurred in September of 1990. *Id.* at Tab B # 18. The report resulting from that assessment recommended "soil sampling" and a "hydrogeological investi-

gation" of the site due to its use as a manufacturing facility and other events, including the presence of historic underground storage tanks. *Id.* at Tab B # 19. In October, 1990, the City hired environmental legal counsel to provide advice regarding the environmental concerns associated with the redevelopment of the properties. These concerns included the allocation of environmental liabilities to responsible parties. *Id.* at Tab B # 20. The City acknowledged the environmental problems in a November 1, 1991, letter to IDEM. *Id.* at Tab B # 25. The City commissioned additional investigations and solicited written assessments of the environmental condition from 1991 to 1995. Each of these investigations revealed further details about the contamination. *See* Appellant's Br. at Tab B # 26–38.

According to Cooper, the City's claims accrued between late 1986 and March 1997, when it solicited and acquired these environmental reports revealing the contamination. *See* Appellant's Br. at 13–14 (citing App. 696–738, 745–59 and 1031–1178). Further, the City summarized its environmental knowledge in a memorandum dated October 10, 1995, stating the City knew of the nature and location of the contamination, was told that Studebaker was the likely source, and knew of the claim that Cooper was Studebaker's legal successor. Appellant's Br. at 9.

Cooper argues receipt of a single report indicating contamination was sufficient to cause the claim to accrue, pursuant to *McFarland Foods Corp. v. Chevron USA, Inc.,* 2001 WL 238084, at *3–4 (S.D.Ind. January 5, 2001) (receipt of a single report indicating the contamination stemmed from an underground petroleum storage tank on the property sufficient to cause landowner's claims to accrue). Here, the City's environmental experts revealed the

environmental condition of the property and put the City on notice that there was a reasonable possibility, if not a probability, that the property was contaminated. Cooper argues that, at that time, the City had sufficient information to be able to file a claim, citing *Detrex Chem. Indus., Inc. v. Skelton,* 789 N.E.2d 75 (Ind.Ct.App.2003) (personal injury claims accrue when doctor informs plaintiff there is a reasonable possibility, if not a probability, that an injury was caused by an act or product). As the City had six years to act, but failed to do so, and more than fourteen years passed between its first written confirmation of contamination and the March 19, 2003, Complaint, Cooper argues the statute of limitations bars the claim.

The City counters that the statute of limitations could not be triggered on any property until the City became the actual owner of the property and had a right to commence its suit. City asserts it would be unfair for a statute of limitations to expire before a person has a cause of action or ability to commence suit. Such lawsuits would be premature because no cause of action accrues for injury to real property until the property belongs to the person entitled to bring a claim. City argues if a prospective redeveloper's rights to pursue an environmental contribution or cost recovery action can be cut off prior to becoming an owner of the contaminated property, the return of brownfields to economic productivity will be severely curtailed.

Cooper complains allowing the mere transfer of property to refresh expired claims will create broad loopholes in the statute of limitations and will inadvertently create a new rule allowing any transfer of property to subvert the governing limitations period despite knowledge of the buyer. This, according to Cooper, goes against standard law that the mere trans-

fer of property does not start a new limitations period. Rather, third parties are usually held accountable for the time running against their predecessors in interest, a principle specifically applied to the six-year statute of limitations for injury to real property, according to Cooper, citing *Mack v. American Fletcher Nat'l Bank & Trust Co.,* 510 N.E.2d 725, 734–35 (Ind.Ct.App. 1987), *trans. denied* (in trust beneficiaries suit alleging improprieties that occurred before vesting of their interests, summary judgment for trustees affirmed on basis that claims accrued at time of the alleged injury even though beneficiaries' interests had not vested at that time).

The City seeks to distinguish *Mack* on the basis the parties there were beneficiaries to a trust when the improprieties were committed by the Trustee and thus had a right to assert claims at the time the wrong was discovered. Also, the City points out that *Mack* is a pre-discovery rule case. It is based on the premise that the statute begins to run when the injurious action occurs, even though the plaintiff may not learn of the act until later.

With regard to the internal memorandum Cooper references, the City points out that the memorandum never discloses the identity of the entity that caused the damage. Appellee's Br. at 31 n. 4.

Cooper points out that the City's predecessors-in-interest are the former owners of each parcel of property in the Studebaker redevelopment zone. Cooper states those owners share a bond of contractual privity with the City and had the same interests in protecting their property rights. They had the same claim the City now advances: that Studebaker contaminated the property. Importantly, Cooper states, the City's predecessors-in-interest knew of the contamination through investigations, public reports, redevelopment plans and community meetings, citing Ap-

pellant's App. 184–90 (deposition testimony of Ann Kolata, senior redevelopment specialist in the City's Department of Community and Economic Development, about community meetings related to the City's redevelopment effort of the Studebaker Corridor), 550–86 (Redevelopment Commission Meeting minutes of June 27, 1990 relating to public hearing and discussion professional services in the Studebaker Corridor), 683–93 (Redevelopment Commission Meeting minutes of October 12, 1990, relating to commission approval for contracts for site inspections, investigation groundwater sampling program, asbestos consulting services, and other environmental consulting services relating to the Studebaker Corridor), and 935–96 (General Development Plan relating to Studebaker Corridor). Allied Products took environmental samples between 1989 and 1995 that identified the contamination. Appellant's App. at 1183–1210 (Site Investigation Report of Allied Products Corporation regarding releases associated with underground storage tank ("UST") systems performed during 1993–1995, preceded by the closure of thirteen USTs during 1989–1991). It is clear that the contamination existed during the tenure of the prior owners for many years before the City brought this action. This is not disputed by the City.

■ Further, the City raises the possibility that the damage from the contamination may yet spread to the surrounding property. The City seems to assert a theory of recovery based on "continuing" or "recurring" injuries. We would point out that "application of the discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong

has occurred." *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind.Ct. App.2006).

The City acquired the property in the redevelopment zone with the intention of rehabilitating this 25–city–block, 104–acre area. The City clearly knew that the property was damaged at the time it began evaluating the site and further when it received the environmental reports identifying parts of the contamination. In fact, in the November 1, 1991, letter to IDEM, the City specifically set out some of its consultant's findings that identified several environmental concerns. Appellant's App. at 743. That letter stated that the City "is prepared to make some good faith efforts to help clean up this property, as outlined below; however, it remains undetermined which costs will be borne by the City and which will be the responsibility of the current property owners." *Id.* at 744. This letter clearly shows the City knew the property was damaged as of late 1991. As the cause of action accrued prior to March 19, 1997, the current action based on the City's common law claims of negligence, trespass, public nuisance, and private nuisance would appear to be barred by the applicable statute of limitations.

B. Statute of Limitations Application to the ELA

■ The City also brought a claim under the ELA seeking compensation for the substantial costs it incurred and will continue to incur in remediating the property. The ELA, Ind.Code section 13–30–9–2, provides:

A person may bring an environmental legal action against a person who caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment to recover reasonable costs of a removal or remedial ac-

tion involving the hazardous substances or petroleum.

The ELA currently contains no statute of limitations provision.[6]

Cooper moved for summary judgment on the grounds that this portion of the suit is time-barred by Indiana Code section 34–11–2–7, the six-year statute of limitations. Cooper maintains that like the City's tort claims, this statutory claim is subject to the discovery rule. Thus, the statute of limitations accrued when the City discovered the contamination, even if that discovery occurred prior to the ELA's 1998 effective date.

Cooper points to a recent ruling by the United States District Court for the Southern District of Indiana granting summary judgment to a defendant in an action brought under the ELA. That ruling suggests that the six year statute of limitations applicable to claims brought under the ELA begins to run from the time the injury was discovered, even if that discovery occurred prior to the ELA's 1998 effective date. The district court's order states:

> In enacting the ELA, the General Assembly expressed its intent that it be applied retroactively. Retroactive application means that the statute or amendment is applicable to a cause of action existing before or after the change in law. Thus, when a newly-enacted, retroactively-applied statute, such as the ELA, covers an injury which was discovered prior to enactment, the statute applies to the right of action when it arose, even if the date is before the change in law. Stated otherwise, the ELA, applied retroactively, means that the statute is to be applied as if it always existed, including at the time the

injury occurred. The statute of limitations accrues at the time a cause of action arose, which, in this case, was the date when CLC received the environmental report documenting the fact of contamination, to wit, in March, 1994. *Commercial Logistics Corp. v. ACF Indus., Inc.*, 2006 WL 3201916, at *8 (S.D.Ind. July 18, 2006) (citation and footnote omitted).

The City argues the trial court correctly ruled the ELA claim was timely because the City could not have maintained an action under the ELA until the date the statute became effective. Therefore, no cause of action accrued on behalf of the City prior to February 1998. Thus, as the ELA provides a new and different cause of action that was not in effect until February 1998, less than six years before this cause was filed, the City argues the statute of limitations could not commence until 1998.

However, under City's position, the City could have incurred contamination cleanup and removal costs, as are now recoverable under the ELA, one hundred years ago. The City could have been fully aware of the relevant discharges and the responsible parties at that time. Under the City's argument, once the ELA had been enacted, the City could have then brought suit against those responsible parties, without regard to how long before the enactment they knew of the facts behind the discharge. Under the City's position, any costs for removal of contamination, no matter when incurred, would now be recoverable under the ELA. The number of ELA suits that would follow from such an interpretation cannot, absent a legislative expression to the contrary, be presumed to have been within the intention of the legis-

---

6. We note that a bill has been introduced in the Indiana Senate that would establish a ten-year statute of limitations for an ELA action. Application of a ten-year statute of limitation would also bar the claim.

lature in enacting the Environmental Legal Action statute. *See Kemp Indus., Inc. v. Safety Light Corp.* 1994 WL 532130, at *30 (D.N.J. January 25, 1994) (action against prior titleholders for historic contamination, seeking relief under New Jersey Spill Act).

A determination of whether the City's ELA claim is time-barred again turns on an application of Indiana's discovery rule. As stated above, under Indiana law, the discovery rule is applied to torts and actions covered by the six-year statute of limitations found in Indiana Code section 34–11–2–7. *Meisenhelder*, 788 N.E.2d at 928. The critical question is when did the City know of, or in the exercise of ordinary diligence, could have discovered the damage to the Studebaker property sustained as a result of the tortious act of another. *Wehling*, 586 N.E.2d at 843.

The City has included its "Designations of Material Issues of Fact Which Preclude Entry of [Cooper's] Motion For Summary Judgment." Appellant's App. at 2983. In that document, the City states it did not know in October 1995 that it had a claim against [Cooper] as the successor to Studebaker. This document, and accompanying affidavit, purports to raise a question of fact as to when the City knew the correct identity of the successor to Studebaker. This does not appear to raise a question of fact regarding when the City knew or could have discovered the condition of the property.

■ The general purpose of a statute of limitations is to encourage the prompt presentation of claims. *Havens v. Ritchey*, 582 N.E.2d 792, 794 (Ind.1991). Statutes of limitation find their justification in necessity and convenience rather than in logic. *Id.* They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memo-ries have faded, witnesses have died or disappeared, and evidence has been lost. *Id.*

■ In light of the evidence presented, summary judgment is appropriate as to the City's claim under ELA statute. Pursuant to the general purpose of a statute of limitations, we hold that the discovery of an injury, not the development of a new statute, commences the running of the statute of limitations. Here, the City began to acquire portions of the property and to assess the environmental condition of the site as early as 1986. This is not disputed by the City. Applying the six-year statute of limitations found in Indiana Code section 34–11–2–7 bars the City's March 19, 2003 ELA claim.

### Conclusion

Concluding that the City's claims under the common law tort theories of negligence, trespass, public and private nuisance, as well as its statutory claim under the ELA are all barred by the six-year statute of limitations, we reverse the order of the trial court, and remand for proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, J., and MATHIAS, J., concur.